## ADALEX CONST. CO. v. ATKINS et al.
### (6 Div. 342.)

(Supreme Court of Alabama. Nov. 19, 1925.)

**1. Contracts ⟨Key⟩198(2)—One contracting to build house and to furnish labor and materials held not merely agent or superintendent of owner.**

One contracting to construct residence and required to furnish labor and order materials in owner's name, was a contractor, with duties incident to that relation, and not an agent or superintendent of owner merely, notwithstanding owner was to meet weekly pay rolls for labor and materials.

**2. Contracts ⟨Key⟩198(2)—Dispensing with architect held not to eliminate condition in contract requiring contractor to construct building in workmanlike manner.**

Change in form of contract for construction of residence by dispensing with architect, did not eliminate general conditions requiring contractor to construct building in a good workmanlike manner, nor was covenant in contract as to maximum cost a mere agreement by contractor to use diligence as an agent to keep cost within limits stated.

**3. Contracts ⟨Key⟩198(2)—Receipt and acceptance by owner of bids for materials does not relieve contractor of duty as to quality of material delivered.**

As regards contract for construction of residence, mere receipt and acceptance by owner of bids for materials would not relieve contractor from duties specified in contract as to quality of material delivered.

**4. Contracts ⟨Key⟩316(1)—Covenant of maximum cost in building contract not waived by owner merely because alterations involved additional cost.**

As regards covenant of maximum cost contained in building contract, if owner causes alterations and additions involving added cost to be made, that without more would not waive covenant, but obligation would remain to construct building within cost limit after deducting cost of extras.

**5. Contracts ⟨Key⟩246—Covenant as to cost in building contract still binding, where changes in plans made by mutual consent.**

If owner and contractor, in course of execution of building contract, modify plans by mutual consent, retaining the covenant as to maximum cost, and owner makes changes on faith of such agreement, covenant as to costs is still binding.

**6. Contracts ⟨Key⟩316(1)—Covenant of maximum cost in building contract waived, where owner demands numerous costly changes despite warning of contractor.**

As regards covenants of maximum cost contained in building contracts, if owner decides on numerous and costly changes and additions, notwithstanding warning by contractor, he thereby waives such covenant, and contractor merely owes duty to hold costs as low as circumstances permit.

**7. Equity ⟨Key⟩409—Report of register not absolutely conclusive, but attended by presumption of correctness accorded to jury's verdict.**

Report of register, to whom case has been referred, is not absolutely conclusive, notwithstanding it was recited in decree of reference that parties consented to such order, but report is attended by presumption of correctness like that accorded verdict of jury.

**8. Trial ⟨Key⟩375—Inspection of premises in dispute by court without consent of parties discretionary, but better practice is to do so in their presence.**

Inspection by court on exceptions to register's report, of premises involved in dispute, without the consent of the parties and not in their presence, is a matter of discretion, but it is commended as a rule of judicial propriety in making inspections that inspection be in presence of parties, or with opportunity to them to be present.

**9. Equity ⟨Key⟩409—Findings of register sustained unless clearly and palpably wrong.**

A register's findings should be sustained, unless the evidence is such that, despite presumption of correctness of register's report, court is convinced that findings of register were clearly and palpably wrong.

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Bill in equity by Dan L. Carmichael against Sara C. Atkins, the Penn Mutual Life Insurance Company of Philadelphia, the Adalex Construction Company, and others and cross-bill by the Adalex Construction Company. From a decree for the cross-respondents Atkins and the life insurance company, cross-complainant appeals. Reversed and rendered.

James H. Willis, of Birmingham, for appellant.

When the reference is by consent, the register's findings of fact are conclusive upon the parties, if there is any evidence to sustain them. Rogers v. Prattville Mfg. Co., 81 Ala. 483, 1 So. 643, 60 Am. Rep. 171; Davis v. Schwartz, 155 U. S. 631, 15 S. Ct. 237, 39 L. Ed. 289; Hattiesburg Lbr. Co. v. Herrick, 212 F. 834, 129 C. C. A. 288; Connor v. U. S., 214 F. 522, 131 C. C. A. 68; Pleasants v. Ross, 1 Wash. (Va.) 156, 1 Am. Dec. 449. Findings made by the register have the force and effect of a jury verdict. Bidwell v. Johnson, 195 Ala. 249, 70 So. 685; Clifford v. Montgomery, 202 Ala. 609, 81 So. 551; Burgess v. Burgess, 201 Ala. 631, 79 So. 193; Chancellor v. Tell, 141 Ala. 634, 37 So. 665; Williams v. Norton, 139 Ala. 402, 36 So. 11; McQueen v. Whetstone, 127 Ala. 417, 30 So. 548. Neither the chancellor nor the appellate court is warranted in setting aside the finding of the register, unless the same is palpably wrong. O'Kelley v. Clark, 184 Ala. 391, 63 So. 948; Denman v. Payne, 152 Ala. 342, 44 So. 635. Deviations from the con-

tract by way of changes were so numerous and material as to constitute a waiver of the warranty of cost. Hutchison v. Cullum, 23 Ala. 622; Barrett-Hicks v. Glas, 14 Cal. App. 289, 111 P. 763; Rhodes v. Clute, 17 Utah, 137, 53 P. 990; Sweatt v. Bonne, 60 Wash. 18, 110 P. 617. Appellant was only liable for violation of some duty of supervision. Stewart v. Boehme, 53 Ill. App. 463; Vigeant v. Scully, 20 Ill. App. 437; Petersen v. Rawson, 34 N. Y. 370; Shipman v. State, 43 Wis. 389. The view by the chancellor of the premise was unauthorized. Broyles v. Priscock, 97 Ga. 643, 25 S. E. 389; Henderson v. Cosby, 103 Ky. 182, 44 S. W. 639; Denver Omnibus & Cab Co. v. Ward Auction Co., 47 Colo. 446, 107 P. 1073, 19 Ann. Cas. 577; Atlantic & B. Ry. Co. v. Cordele, 125 Ga. 373, 54 S. E. 155; 26 R. C. L. 1085.

Black & Harris and W. C. Woodall, all of Birmingham, for appellees.

Warranty of original cost of construction of a building is not waived by reason of changes in plans, unless the changes are so material as will result in a new and different understanding. Hutchison v. Cullum, 23 Ala. 622; Rhodes v. Clute, 17 Utah, 137, 53 P. 990. The fact that the owner furnishes material and pays for labor does not prevent the builder from being an independent contractor. Emmerson v. Fay, 94 Va. 60, 26 S. E. 386; Smith v. Simmons, 103 Pa. 32, 49 Am. Rep. 113; Carter v. Berlin Mills Co., 58 N. H. 52, 42 Am. Rep. 572. The matter of viewing premises by the chancellor is a question resting within his sound discretion. Consent of parties is not necessary. Jenkins v. Steel Cities Chem. Co., 208 Ala. 643, 95 So. 22; Faught v. Leith, 201 Ala. 452, 78 So. 831; 22 C. J. 766; 2 Wigmore on Evi. 1163. The matter will not be reviewed on appeal. L. & N. v. Wilson, 162 Ala. 588, 50 So. 188.

BOULDIN, J. This suit involves the claim of a contractor for balance due for labor and materials furnished in the erection of a residence under written contract with the owner, and the enforcement of a mechanic's lien therefor. The issues presented go to the question of indebtedness vel non. The register, on a reference, found for the contractor for the amount claimed. The trial court sustained exceptions to the report, and rendered a decree in favor of the owner.

The contract was as follows:

"This agreement made this 10th day of November, 1921, by and between Adalex Construction Company, hereinafter called the contractor, and Mrs. Sara C. Atkins, hereinafter called the owner, witnesseth:

"That the contractor and the owner for the considerations hereinafter named agree as follows:

"Article 1. The contractor agrees to perform all the work shown on the drawings and described in the specifications, subject to changes shown in article 4, entitled: 'Specifications for residence for Mrs. O. D. Atkins (Cliff Road) Birmingham, Alabama,' prepared by Brooks B. Burnham, architect, and to do everything required by the general conditions of the contract, the specifications and the drawings.

"Article 2. The contractor agrees that the work under this contract shall be substantially completed by February 14, 1922.

"Article 3. The owner agrees to pay the contractor, on satisfactory completion of the work, a fixed fee of six hundred dollars ($600). It is understood that all material for the work is to be ordered in the owner's name and is to be paid for by the owner; pay rolls to be met weekly by the owner.

"Article 4. The contractor agrees that the entire cost of building (that is, material, labor, and the contractor's fixed fee of $600, exclusive of plumbing, heating, and electrical fixtures) will not exceed ten thousand dollars ($10,000), provided the owner co-operates with the contractor. (It is the opinion of the contractor that the cost will be approximately $9,000.)

"The contractor and the owner agree that the general conditions of the contract, the specifications and the drawings, together with this agreement, form the contract, and that they are as fully a part of the contract, as if hereto attached or herein repeated; and that the following is an exact enumeration of the specifications and drawings:

"Specifications—13 sheets.

"Drawings—8 sheets.

"Contract as here signed includes everything, but plumbing, heating, and electric fixtures."

Then follow alterations from plans and specifications, designed to reduce the cost, which need not here be set out.

Without material controversy, the amount due the contractor, consisting of agreed price for tile roof furnished and laid at $525 and unpaid balance on the fixed fee of $600, aggregates $832.54, with interest from February 15, 1922, as found by the register.

The defense is by way of recoupment for breach of contract in two regards: (1) Breach of covenant or guaranty of maximum cost as stipulated in the contract above; (2) breach of contract for good workmanship, resulting in defects in the building to the damage of the owner.

To the first alleged breach the contractor replies that the actual cost of the building as per contract did not exceed the amount stipulated; that the excess cost was due to alterations and additions made on orders of the owner, not covered by the guaranty; that the owner expressly waived the guaranty by directing changes and additions after warning that they would run above stipulated costs, and her agreeing to take the risk; that it was impliedly abandoned by such substantial changes and additions as to work a release of the obligation as to maximum cost.

To this the owner responds that the changes were made upon consultation and agreement that the changes would not add to the cost, or that compensating omissions would prevent the cost running above $10,000, and were made with the mutual assent that

the guaranty of cost should remain in force, and that the changes did not in fact involve any such material additions to the cost as would avoid the guaranty in the contract.

To the charge of defective workmanship, the contractor makes denial, and sets up that alleged defects, so far as they exist, were due to the orders of the owner in omitting supporting columns against the advice of the contractor; to changes on type of construction in which the owner assumed the risk; to the low grade of materials specified and used; to defects in the plans; to an omission not covered by this, but by the plumber's, contract.

Some other issues are more or less stressed in the case; but the above will illustrate the scope and nature of the matters litigated between the parties.

A few questions of law are raised, which we think determinable upon elemental principles governing contracts.

This is a form of "cost plus" contract. The compensation of the contractor is made a flat fee instead of a commission or per centum on cost; and, instead of a regular contract for a completed job at a fixed price, there is a covenant in the nature of a guaranty of maximum cost on the conditions named. The general conditions embodied in the specifications and drawings defining the duty of the contractor in matter of workmanship and material are part of the contract.

[1] The construction company was a contractor with the duties incident to that relation, and not an agent or superintendent merely. True, the owner was to meet the weekly pay rolls for labor and material; but the contractor was to furnish the labor and order the materials in the owner's name. He had the duty to furnish competent labor and see that the material conformed to specifications.

[2] While the specifications as drawn looked to the letting of the contract in the usual way, subject to the supervision of an architect, and the change of form of contract dispensing with an architect had the effect to strike out such specifications as were applicable only to the form of contract first contemplated, this did not strike out the general conditions requiring the contractor to construct the building in a good workmanlike manner; nor is the covenant as to cost a mere agreement to use due diligence as an agent to keep the cost within the limit stated.

[3] Of course, if the owner take into his own hands the selection and purchase of material or employment of labor, the contractor's duty would be limited to proper supervision. The mere receipt and acceptance by the owner of bids for material to be furnished according to specifications would not relieve the contractor from his duties as such touching the quality of material delivered.

[4] The covenant of maximum cost is limited by its terms to the construction of the building called for in the contract. If the owner, by virtue of her right to make changes, causes alterations and additions to be made which involve added cost, this, without more, would not waive the covenant, but the obligation would remain to construct the building within the cost limit after deducting the cost of extras.

[5] If the parties co-operating together agree that changes be made wherein the omissions are agreed to be equal to the additions in cost, or, in other words, if the parties in course of execution of the contract modify the plans by mutual consent, keeping in mind and intact the stipulation as to cost, and the owner makes the changes on the faith of such agreement, the covenant as to costs is still binding. Indeed, if a suggested change is brought to the attention of the contractor to be made upon condition that it will not extend the cost beyond the limit, and the contractor approves the change, the covenant stands, although the extra cost may run above the limit. On the other hand, if the owner decides upon a change and merely asks the opinion of the contractor as to the probable extra cost, the mere expression of an opinion in good faith does not operate as a modification of the terms of the contract. There must be a meeting of the minds of both parties to the effect that the contemplated change shall come within the guaranty as to costs.

[6] Again, if the parties begin with a view to holding down costs, but in course of construction the owner decides upon numerous and costly changes and additions, is warned that they will pass the cost limit, but nevertheless, with a mind to "want what I want like I want it," demands the extra expense be incurred, this is a waiver of the cost limit, and the contractor merely owes the duty to hold the costs as low as the circumstances permit.

[7] A question is raised by appellant as to the conclusiveness of the register's findings upon the court below and upon this court. In the decree of reference it is recited that the parties "consent to this order." Thereupon it was ordered that the register hear the evidence, find the amount due the parties pro and con, and "report his conclusions of law and facts" with the testimony taken by him.

Appellant submits that this consent decree binds the parties in such way that the register's findings of fact cannot be impeached except upon like grounds as the award of arbitrators.

Rodgers v. Prattville Mfg. Co., 81 Ala. 483, 488, 1 So. 643, 60 Am. Rep. 171, is relied upon in support of this view. In that case the order of reference recited it was by consent in writing referred to the register to make his report upon matters referred, "which report it is agreed by the parties shall be final." This court held such consent decree precludes all exceptions to the findings of the register

and "places them on the high plane of an arbitration and award."

That case is not in point here. There was no agreement that the register's findings should be final. In effect, it was a consent reference, in that the parties agreed the case was a proper one for reference and report.

In jurisdictions where the ordinary reference is merely to take testimony and report it to the court, an agreement of parties extending the reference to findings upon the facts is more in the nature of an arbitration and award than under our practice. That the parties have selected a special tribunal is given as a reason for the strong statement of the rule applying to the report. However, in these jurisdictions, the report is not generally declared absolutely conclusive, but attended by the presumption of correctness like that accorded the verdict of a jury. Davis v. Schwartz, 155 U. S. 636, 15 S. Ct. 237, 39 L. Ed. 289; Connor v. United States, 214 F. 522, 527, 131 C. C. A. 68.

This is the same presumption obtaining with us where the findings of the register are based, in whole or in part, upon the testimony of witnesses taken orally before him. Such is the rule applicable to the present case.

[8] The register's report recites:

"I, the said register, at the solicitation of said parties, in company with the respective attorneys for said parties, viewed the residence, grounds, and improvements mentioned in said pleadings."

The decree recites:

"The court ex mero motu and without notice to or consent of cross-complainant, Adalex Construction Company having gone in person and examined the premises and the buildings and inspected the same," etc.

Appellant insists it was error for the judge to inspect the premises without consent of parties. There is authority for this view. 26 R. C. L. 1085. In this state, it is a matter of discretion. Jenkins v. Steel Cities Chemical Co., 208 Ala. 643, 95 So. 22. It is suggested the inspection by the judge was in violation of the general rule that on exceptions to the register's report the court is limited to the testimony reported by the register. We do not so consider it under the conditions in this case. The register's report showed his finding was after an inspection of the premises. The court by inspection was placing himself, so far as practical, in possession of the same evidence available to the register.

Should the court give notice to the parties of his purpose to make inspection with an opportunity to be present by counsel? It is assumed, as of course, that in making an inspection, in the absence of and without notice to the parties, the court exercised all the safeguards he would have thrown about a jury in making an inspection. But it is the wise policy of the law that, in receiving evidence of any kind in judicial proceedings, it should, so far as practical, be done in the presence of the parties, or with opportunity to be present. We commend this as a rule of judicial propriety in making inspections.

The results of an inspection, while placing the judge in like position with the register as to facts ascertainable thereby, placed him in no better position in that regard, and still without the advantage of having seen and heard the witnesses upon oral examination.

[9] In passing upon the issues here, the case is within the rule that the register's findings should be sustained, unless upon the evidence we would overturn the verdict of a jury; that is, unless the evidence is such that despite the presumption we are convinced the findings of the register were clearly and palpably wrong. Pollard v. Mortgage Co., 139 Ala. 183, 200, 35 So. 767; Andrews v. Frierson, 144 Ala. 470, 39 So. 512; Bidwell v. Johnson, 195 Ala. 547, 70 So. 685; Faulk v. Habbie, 178 Ala. 254, 59 So. 450; Roy v. O'Neill, 168 Ala. 561, 52 So. 946; Clifford v. Montgomery, 202 Ala. 609, 81 So. 551; Burgess v. Burgess, 201 Ala. 631, 79 So. 193; Cobb v. Malone, 92 Ala. 630, 9 So. 738.

The legal principles we have discussed are used as guiding rules in passing upon the facts presented by the record.

The register found and reported in itemized form more than forty items of additions and alterations, and other added expenses, incurred in course of construction, increasing the cost in the aggregate sum of $2,423.60; that there were compensating omissions aggregating $379.80, leaving the net increase in cost $2,043.80; that the full cost of the building was $11,271.52; that, deducting the extras, the cost of the building as per contract was $9,227.72, or $772.28 below the guaranteed limit of cost. He further finds a waiver of the stipulation as to cost. He then deals with matter of defects in workmanship in detail, finding all these issues for the contractor upon grounds mentioned in the opening statement of this opinion.

The register's report disclosed full consideration of the several issues, and makes a full report covering more than fourteen pages of the typewritten record. His findings upon questions of law were not in some respects in keeping with the rules above announced, but he proceeded to consider and report fully his findings of fact under either view.

We have considered with much care the voluminous evidence pertaining to the several matters presented, with the aid of full and carefully prepared briefs on both sides. A discussion of the details would extend this opinion beyond all legitimate bonds. A discussion of particular phases would be misleading and unfair. The testimony is in sharp conflict. The major questions turn on evidence given ore tenus before the register. The evidence supports his findings. They should be sustained.

The decree of the court below is reversed

and one here rendered for the cross-complainant, Adalex Construction Company, for the amount found due by the register, and a mechanic's lien decree upon the building and lot described in the pleadings superior to the subsequent mortgage of Penn· Mutual Life Insurance Company of Philadelphia.

Reversed and rendered.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.